*21-mj-6046-MPK*
*21-mj-6120-MPK*

# AFFIDAVIT IN SUPPORT OF
# A CRIMINAL COMPLAINT AND AN APPLICATION FOR A SEARCH WARRANT

I, Zachary A. Brune, being duly sworn, state:

**Introduction and Agent Background**

1. I am a Special Agent with the Federal Bureau of Investigation ("FBI"), and have been so employed since March 2020. Since January 2021, I have been assigned to the Boston Division of the FBI. More specifically, I am currently assigned to the FBI Boston Division's Violent Crime Task Force ("VCTF"), which is comprised of law enforcement personnel from the FBI, Boston Police Department ("BPD"), Massachusetts State Police ("MSP"), Braintree, Malden, Saugus, Somerville, and Dedham Police Departments.  As a Special Agent with the FBI, I have conducted investigations dealing with bank and commercial robberies and burglaries, Hobbs Act offenses, extortion, and crimes against persons.  I have also received specialized training regarding investigative techniques, evidence collection, and evidence preservation.

2. I make this affidavit in support of:

   a. a criminal complaint charging Jamaine Howell ("Howell"), DOB: xx/xx/1985, with bank robbery, in violation of 18 U.S.C. §§ 2113(a) and (d), and using or carrying a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A); and

   b. an application for a search warrant to search electronic equipment, specifically a black Samsung smartphone with IMEI number 3517 6711 3348 279 (the "Subject Phone"), that is in the possession of law enforcement investigators, as described in Attachment A.  There is probable cause to believe that the equipment contains evidence, fruits, and instrumentalities of bank robbery, in violation of 18 U.S.C. §§ 2113(a) and (d); using or carrying a firearm during

and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A); and possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. § 922(g), as described in Attachment B

3. The facts stated herein are based on my own personal involvement with this investigation, as well as from information provided to me by other law enforcement officers involved in the investigation. In submitting this affidavit, I have not included each and every fact known to me about this investigation; rather, I am only submitting enough evidence necessary to establish the requisite probable cause.

## STATEMENT OF PROBABLE CAUSE

### TD Bank Robbery

4. According to bank video surveillance footage, as well as witness statements taken later by law enforcement, on February 7, 2021, at approximately 12:19 p.m, a heavy-set male wearing a large black coat (the "Robber") entered the TD Bank located at 1230 Commonwealth Avenue in Allston, Massachusetts. The Robber approached the teller; presented a demand note; stated words to the effect of, "Follow these instructions, don't react;" and then handed the teller a brown plastic bag. The Robber also stated words to the effect of, "You better not push anything; you better not alert anything; I have a gun." The teller removed all the money in her drawer and placed it into the brown plastic bag as directed.

5. While the teller placed money from her drawer into the brown bag, the Robber is seen on video approaching two bank customers:

   a. The Robber approached the first customer, "Bank Customer 1," who was later interviewed by law enforcement, and asked if Bank Customer 1 had a car. When Bank Customer 1 responded yes, the Robber demanded his keys and

displayed a handgun in his waistline.[1] The Robber further stated, "if you make any move, I'm going to shoot someone," or words to that effect. Bank Customer 1 described the firearm as a black semi-automatic handgun.

b. The Robber then approached the second customer, "Bank Customer 2," who was later interviewed by law enforcement, while he was on his cell phone. The Robber took his cell phone out of his hands while asking, "who are you calling," or words to that effect.

6. Once the teller placed money from her drawer in the brown plastic bag, the Robber grabbed the bag from the teller and approached Bank Customer 2 again. The Robber said to Bank Customer 2 words to the effect of, "C'mon man, you're coming with me," and "I will shoot your white ass, I have a big ass gun." The Robber then led Bank Customer 2 out of the bank. Outside the bank, the Robber threatened Bank Customer 2 again, with words to the effect of, "come on white boy, I said I'll shoot you." After traveling about a block, Bank Customer 2 managed to escape from the Robber while the Robber was distracted, and Bank Customer 2 ran back to the bank.

7. The teller who interacted with the Robber was interviewed by law enforcement, and described the robber as a Black male with a heavy-set build wearing a big black coat and dark blue jeans. Bank surveillance camera images of the Robber are consistent with the teller's description, and show the Robber wearing a large black jacket, dark jeans, a black mask, and black shoes.

---

[1] Bank Customer 1's keys were not on his person; rather, the keys were in his running car outside, while his family was still in the vehicle.

8.     A post-robbery audit determined that the Robber had taken approximately $5,903.50 in U.S. currency during the robbery.  Agents have confirmed from open source records that, at the time of the robbery, the TD Bank deposits were insured by the Federal Deposit Insurance Corporation.

## Identification of the Robber

9.     On February 13, 2021, at approximately 11:15 p.m., Sharon Police Department officers were called to the Best Western Hotel located at 395 Old Post Road in Sharon, Massachusetts, in response to a report of a guest brandishing a firearm at another guest.  Upon arrival, Sharon Police Department officers learned that the suspect had since left the area in a maroon Chrysler Pacifica Minivan with New Jersey license plates.

10.     Based on witness accounts and hotel surveillance video, the suspect was a heavy-set Black male wearing a large black coat.  Officers interviewed the victim, who described the firearm as a black semi-automatic handgun.

11.     The hotel manager later identified the suspect from hotel guest records as Jamaine Akkim Howell, DOB xx/xx/1985, with Massachusetts Driver's License Sxxxx6150.

12.     The Sharon Police Department, using the Massachusetts Fusion Center, notified VCTF personnel about the incident.  VCTF agents observed that the subject identified in the Best Western surveillance video photographs appeared to be the same subject identified in the TD Bank robbery surveillance video from February 7, 2021, based on his physical appearance and the jacket depicted in both videos.

13.     VCTF determined from rental company records that Howell had rented a maroon 2020 Chrysler Pacifica with New Jersey license plate, F66MSB, from on or about January 23, 2021, through and until February 17, 2021.

14. Review of his criminal records showed that, at the time of the TD Bank robbery and the Best Western incident, Howell had two active arrest warrants for probation violations from Essex Superior Court (*see* Docket No. 1877PT00778) and Chelsea District Court (*see* Docket No. 1814CR003327), both issued on January 25, 2021. Howell has multiple prior felony convictions, including three prior state convictions for armed robbery (*see* Suffolk Superior Court Docket No. 1384CR10016, and Middlesex Superior Court Docket Nos. 1181CR01111 and 1181CR01218). Howell is currently on state probation resulting from prior armed robbery convictions.

### Arrest of Howell

15. On February 16, 2021, at approximately 6:05 p.m., Lynn Police Department officers arrested Howell on active arrest warrants at the Enterprise Rent-a-Car located at 361 Lynnway in Lynn, Massachusetts. The officers, after receiving a "be-on-the-lookout" report from their local agency, identified the maroon 2020 Chrysler Pacifica with New Jersey license plate, F66MSB, parked with its engine running in front of the Enterprise Rent-a-Car office. Officers observed a heavy-set male fitting the description of Howell sitting inside the Enterprise Rent-a-Car office. Once apprehended, officers discovered a loaded .45 caliber Ruger handgun in Howell's possession, in his right bottom pocket of the jacket he was wearing.

16. VCTF agents subsequently conducted an interview of Howell at the Lynn Police Department. VCTF agents read Howell his *Miranda* rights, and Howell agreed to waive those rights and speak with the agents. The interview, including the discussion of his *Miranda* rights, was video and audio recorded. After waiving his *Miranda* rights, Howell confessed to the February 7, 2021, armed robbery of the TD Bank in Allston. Howell further confessed that he used the .45 caliber Ruger handgun, found in his possession at the time of his arrest, during the robbery. When questioned about the handgun, Howell stated that he purchased the firearm outside

of Massachusetts, but would not provide further details. Howell also told agents that he had another firearm in the Chrysler Pacifica he had rented.

### Search of Howell's Vehicle

17. On February 19, 2021, Lynn Police Department officers executed a state search warrant to search the 2020 Chrysler Pacifica that was located outside the location at which Howell was arrested on February 16, 2021.[2] Officers discovered and seized various items from Howell's vehicle during the search, including the following:

  a. A black Stryker semi-automatic shotgun, loaded, with a red dot sight affixed to the shotgun and an unattached shoulder stock;

  b. A black Samsung smartphone with IMEI number 3517 6711 3348 279 (the "Subject Phone"); and

  c. Documents bearing Howell's personal identifying information.

18. The Subject Phone is currently in the possession of the FBI, and is being stored at its facilities, as described in Attachment A. From my training and experience and the training and experience of law enforcement personnel who routinely handle this equipment, I understand that it has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when it first came into the investigators' possession.

### Probable Cause to Believe the Subject Phone Contains Evidence, Fruits, and Instrumentalities

19. From my training, experience, and information provided to me by other agents, I am aware that individuals frequently use computer equipment, such as smartphones, to carry out, communicate about, and store records regarding their daily activities. These tasks are frequently

---

[2] As noted above, Howell rented this vehicle from on or about January 23, 2021, through and until February 17, 2021. Howell's rental period had concluded prior to the search.

6

accomplished through sending and receiving e-mail, instant messages, and other forms of phone or internet based messages; scheduling activities; keeping a calendar of activities; arranging travel; purchasing items; searching for information including information regarding travel and activities; arranging for travel, accessing personal accounts including banking information; paying for items; and creating and storing images and videos of their movements and activities.

20. Based on my training, experience, and information provided by other law enforcement officers, I know that many smartphones, such as the Subject Phone, can now function essentially as small computers. Smartphones have capabilities that include serving as a wireless telephone, digital camera, portable media player, GPS navigation device, sending and receiving text messages and e-mails, and storing a vast range and amount of electronic data. Examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device, and historical location information. I expect that any phone utilized by Howell on February 7, 2021 would be likely to contain information about Howell's whereabouts on that day, including but not limited to calendar entries, GPS location information, communications reflecting his intended or actual whereabouts, information concerning purchases or transactions; and/or internet search history reflecting his plans and activities.

21. Based on my knowledge, training, experience, and information provided to me by other agents, I know that data can often be recovered months or even years after it has been written, downloaded, saved, deleted, or viewed locally or over the Internet. This is true because:

    a. Electronic files that have been downloaded to a storage medium can be stored for years at little or no cost. Furthermore, when users replace their electronic equipment, they can easily transfer the data from their old device to a new one.

    b. Even after files have been deleted, they can be recovered months or years later

using forensic tools. This is so because when a person "deletes" a file on a device, the data contained in the file often does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data, which might not occur for long periods of time. In addition, the device's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c. Wholly apart from user-generated files, electronic storage media often contains electronic evidence of how the device has been used, what it has been used for, and who has used it. This evidence can take the form of operating system configurations, artifacts from operating system or application operation; file system data structures, and virtual memory "swap" or paging files. It is technically possible to delete this information, but users typically do not erase or delete this evidence because special software is typically required for that task.

d. Similarly, files that have been viewed over the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache." The browser often maintains a fixed amount of hard drive space devoted to these files, and the files are overwritten only as they are replaced with more recently viewed Internet pages or if a user takes steps to delete them.

22. Based on my knowledge, training, and experience, and information provided to me by other agents, I understand that individuals who obtain firearms or ammunition frequently utilize phones and/or computers in connection with their acquisition of firearms or ammunition. Among the manners in which such persons utilize phones and/or computers are to research types and

pricing of firearms; to conduct research concerning sellers or potential sellers of firearms or ammunition; to communicate with sellers or potential sellers of firearms or ammunition; to obtain photographs or other information concerning firearms offered for sale; to transmit funds to the sellers of firearms or ammunition; and to plan and carry-out travel to the location of a seller of firearms or ammunition.

23.     Based on all of the information described here, there is probable cause to believe that the Subject Phone in FBI custody contains contraband and evidence, fruits, and instrumentalities of the bank robbery, use of a firearm during and in relation to the bank robbery, and possession of a firearm and ammunition by a convicted felon, Howell.

## **CONCLUSION**

24.     Based on the foregoing, I submit there is probable cause to believe that on February 7, 2021, Jamaine Howell, by force and violence and by intimidation, did take and attempt to take from the person and presence of another, money in the care, custody, control, management, and possession of the TD Bank in Allston, Massachusetts, the deposits of which were then insured by the Federal Deposit Insurance Corporation, and in committing such offense, did assault or put in jeopardy the life of another person by the use of a dangerous weapon, in violation of 18 U.S.C. §§ 2113(a) and (d), and that Howell did knowingly use and carry a firearm during and in relation to, and did knowingly possess said firearm in furtherance of, a crime of violence, that is, bank robbery, in violation of 18 U.S.C. § 924(c)(1)(A).

25.     Based on the foregoing, I further submit that there is probable cause to believe that evidence, fruits, and instrumentalities of violations of 18 U.S.C. §§ 2113(a) and (d), 18 U.S.C. § 924(c)(1)(A), and 18 U.S.C. § 922(g), as described in Attachment B, are contained within the Subject Phone, described in Attachment A.

                                            Respectfully submitted,

                                              /s/ Zachary A. Brune
                                          _____
                                          Zachary A. Brune, Special Agent
                                          Federal Bureau of Investigation

Sworn before me telephonically pursuant to Fed. R. Crim. P. 4.1(d)(3) this __22nd__ day of February 2020.

__/s/ Page Kelley__
HONORABLE M. PAGE KELLEY
CHIEF UNITED STATES MAGISTRATE JUDGE